Spencer G. Scharff (Bar No. 028946)
Goddard Law Office PLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 258-5521
scharff@goddardlawplc.com

*Attorney for the Plaintiffs*
(*additional counsel below*)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| League of United Latin American Citizens Arizona; Arizona Students' Association,<br><br><br>Plaintiffs,<br><br>v.<br><br>Michele Reagan, in her official capacity as Secretary of State of Arizona; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | No.<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1.     This is an action challenging Arizona's arbitrary dual voter registration policies that irrationally disenfranchise thousands of eligible Arizona voters and further no legitimate state interests. After the Supreme Court held that the National Voter Registration Act ("NVRA") did not allow Arizona to reject

federal registration forms for lack of documentary proof of citizenship ("DPOC"), the Secretary of State implemented a dual registration system in order to enforce its DPOC requirement for state election voter registration. The design of this system, however, is so fundamentally flawed that it disenfranchises tens of thousands of Arizonans without furthering the state policies, however tenuous, behind the original DPOC requirement.

2.     Arizona's current registration policies arbitrarily disenfranchise eligible voters depending on whether they happen to complete the Arizona Voter Registration Form ("State Form") (attached as Exhibit 1) or the National Mail Voter Registration Form ("Federal Form") (attached as Exhibit 2) even though Arizona holds out its state form as an omnibus option for registering for all elections.

3.     If the voter completes the Federal Form without DPOC, the voter is registered to vote in federal elections but not state elections and advised to submit DPOC to vote in state elections. However, if the voter completes the State Form without DPOC, the voter is not registered for state *or* federal elections and, in violation of prior court order, is not advised of the Federal Form option.

4.     The Secretary's policies also impose unjustified burdens on access to the right to vote by rejecting voter registration forms for lack of DPOC even

when the Secretary of State's office already has the type of evidence necessary to satisfy the statutory DPOC requirement readily available to it.

5.     The impact of these unjustified policies on eligible Arizona voters is undeniable. Upon information and belief, at least 26,000 voters in Maricopa County alone have been disenfranchised by these policies. Moreover, based on a sample of over 2,000 rejected State Form registrations for lack of DPOC across eight counties, less than fifteen percent of the rejected voters successfully re-registered after receiving notice of the rejection of their registrations. Therefore, many eligible voters across Arizona have been disenfranchised by these unnecessary bureaucratic policies.

6.     These policies violate prior federal court orders, have disenfranchised tens of thousands of Arizonans, and cannot survive constitutional scrutiny.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     This Court has personal jurisdiction over the Defendant Secretary of State Reagan, an elected official for the State of Arizona and resident of the State of Arizona.

9.     This Court has personal jurisdiction over the Defendant Maricopa County Recorder Fontes, an elected official for Maricopa County and resident of Maricopa County.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

11.    This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTS

### Proposition 200

12.    In 2004, Arizona passed a state initiative, Proposition 200, that would require voters to present documentary proof of citizenship—in addition to the already-existing attestation of U.S. citizenship requirement on federal and state registration forms—to register to vote. Ariz. Rev. Stat. §§ 16-166(F), 16-152(A)(23).

13.    Under the law, sufficient DPOC includes:

- The number of the applicant's driver license or nonoperating identification license issued after October 1, 1996 by the department of transportation or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver license or nonoperating identification license that the person has provided satisfactory proof of United States citizenship.

- A legible photocopy of the applicant's birth certificate that verifies citizenship to the satisfaction of the county recorder.

- A legible photocopy of pertinent pages of the applicant's United States passport identifying the applicant and the applicant's passport number or presentation to the county recorder of the applicant's United States passport.

- A presentation to the county recorder of the applicant's United States naturalization documents or the number of the certificate of naturalization. If only the number of the

4

certificate of naturalization is provided, the applicant shall not be included in the registration rolls until the number of the certificate of naturalization is verified with the United States immigration and naturalization service by the county recorder.

- Other documents or methods of proof that are established pursuant to the immigration reform and control act of 1986.

- The applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number.

Ariz. Rev. Stat. § 16-166(F).

14.    Proposition 200's DPOC requirements are not the only proof of citizenship required for applying to register to vote. Both the Federal Form and the State Form require attestations, under penalty of perjury, of an individual's citizenship of the United States and residency in Arizona.[1]

---

[1] This case challenges the Secretary of State's dual registration policies, which cannot be justified even assuming a legitimate state interest in requiring DPOC of voters before they can register for state elections. However, Plaintiffs do not concede that Arizona has any such legitimate interest in requiring DPOC. There is no evidence of significant noncitizen voting anywhere in the country. In *Kobach v. United States Election Commission*, Arizona sought to force the Election Assistance Commission to include its DPOC requirement on the state-specific instructions for the Federal Form by arguing that it was necessary for it to determine the eligibility of voters. 772 F.3d 1183 (10th Cir. 2014). Applying traditional APA review standards, the Tenth Circuit held that the record established that Arizona "failed to advance proof that registration fraud in the use of the Federal Form prevented Arizona and Kansas from enforcing their voter qualifications." *Id.* at 1188. Since then, further litigation in Kansas has led to additional court findings that DPOC requirements do not address any meaningful problem of noncitizen voting and result in large-scale disenfranchisement of eligible voters. *Fish v. Kobach*, 840 F.3d 710, 749, 755 (10th Cir. 2016) ("Here, Secretary Kobach offers us nothing more than the meager evidence of noncitizens registering to vote that he proffered in connection with his statutory arguments *supra*— evidence that we deemed insufficient to show that substantial numbers of noncitizens had registered to vote."); ("On the other side of the equation is the near certainty that without the preliminary injunction over 18,000 U.S. citizens in Kansas will be disenfranchised for purposes of the 2016 federal elections—elections less than one month away.").

15.    Initially, Arizona applied this additional step for voter registration to both state and federal elections.

16.    However, Arizona residents and non-profit organizations (including Plaintiff League of United Latin American Citizens Arizona) filed suit alleging, among other things, that Proposition 200 violated the National Voter Registration Act ("NVRA") by requiring additional information beyond that required on the Federal Form. The NVRA requires that all states "accept and use" the Federal Form for voter registration for federal offices. 52 U.S.C. § 20505(a)(1). The purpose of this provision and the NVRA overall was to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1).

17.    In 2013, the Supreme Court held that the NVRA's requirement that all states "accept and use" the uniform Federal Form for registration in federal elections, 52 U.S.C. § 20505(a)(1), preempted the law, at least insofar as it applied to Federal Form registrants. *See Arizona v. Inter Tribal Council of Arizona* ("*Inter Tribal*"), 133 S. Ct. 2247 (2013).

18.    Therefore, Arizona is no longer permitted to restrict access to voting in federal elections based on provision of DPOC.

19.    After *Inter Tribal*, the Arizona Attorney General issued an opinion, at the request of Arizona Secretary of State Ken Bennett, finding that Arizona law allows for a dual registration system for state and federal elections and

determining that voters who do not attach DPOC should not be registered for state elections pursuant to state law. Ariz. Op. Atty. Gen. No. I13-011 (2013).

20.    In June 2014, the Secretary of State published a new Election Procedures Manual to implement the bifurcated voter registration system proposed by the 2013 Attorney General Opinion. *See* State of Arizona Elections Procedures Manual (2014) (attached as Exhibit 3).

21.    Unfortunately, the Secretary of State's procedures do not solely implement the Attorney General's command that "[f]or state and local matters, registration is contingent on each applicant's providing evidence of citizenship." Ariz. Op. Atty. Gen. No. I13-011 (2013). The Secretary of State's procedures unnecessarily create a system that distinguishes and disenfranchises individuals in federal elections based solely on which registration form they use, not their eligibility to vote or what information they provide, and disenfranchises voters in state elections even when the required DPOC for those voters is readily available to the Secretary of State.

**Arbitrary Failure to Register Voters for Federal Elections**

22.    The State Form and Federal Form collect the exact same information about voter registrants. If a voter uses a Federal Form and does not attach DPOC, she is registered for federal elections only and notified to submit DPOC in order to vote in state elections. But if that voter registrant happens to use a State Form—which Arizona election officials hold out as a universal

7

form for state and federal elections—she is not registered for any elections, federal or state. The State Form does not inform the voters of this critical distinction, nor do nearly all county recorders' offices, in clear violation of the District Court judgment in *Inter Tribal*, *see infra* at ¶¶ 28-36. There is no basis for this arbitrary treatment of voters.

23.     Arizona disseminates its State Form as an omnibus option for registering for state and federal elections, pursuant to the NVRA, 52 U.S.C. § 20505(a)(2).

24.     The 2014 Election Procedures Manual instructs registrars that "a federal form may not be rejected because the applicant has not provided evidence of citizenship." Ex. 3 at 22. If the registrar is unable to verify citizenship through relevant MVD records, *see infra*, the registrant is still registered for federal elections.

25.     Yet, the same manual instructs registrars to disregard State Form applications completely if they do not contain DPOC: "If the form is not accompanied by proper proof of citizenship, the voter registration form is not valid and either will not be entered into the system or if it was entered into the system, the record shall be canceled. If the registrant subsequently provides proof of citizenship, it must be accompanied by a new voter registration form and a new registration date." *Id.* at 17.

26.    Apart from the DPOC requirement, there is no meaningful difference between the information provided on the State Form and the Federal Form with respect to proving eligibility to vote. Both forms include an attestation of citizenship, under penalty of perjury, and all the other necessary information to register to vote for federal elections.

27.    Thus, in the absence of DPOC, the rejection of one citizen's registration and the acceptance of another's registration to vote in federal elections hinge entirely on what form the citizen submits, not whether they attach DPOC.

28.    Defendants further exacerbate the harms of this arbitrary system by failing to educate voters about this critical distinction in violation of the District Court's order in *Inter Tribal*.

29.    The District Court's order in *Inter Tribal* required Defendants, including the Secretary of State and *all* Recorders and Election Directors of Arizona's counties, to "ensure that *all* written materials regarding the process for registering to vote, that Defendants distribute or make available to the public (including websites), include a statement that individuals may apply to register to vote in elections for Federal office using the Federal Form, and that, in using the Federal Form, applicants are not required to provide the documentary proof of citizenship information . . . in order to register to vote." *Gonzalez v. Arizona*, No. CV-06-1268, 2013 WL 7767705, at *1 (D. Ariz. Sept. 11, 2013) (emphasis added).

30.    But this notification is absent from nearly *all* written materials distributed by election officials regarding voter registration.

31.    First and foremost, the State Form lacks any notification of the Federal Form option, which does not require DPOC. *See* Ex. 1. To the contrary, the State Form instructs voters that DPOC is an unqualified requirement for voter registration. *Id.*

32.    Therefore, when the State Form is distributed to voters at local agencies, registration drives, libraries, and other locations, voters are not aware of the Federal Form option.

33.    Second, this notification is also absent from the instructions on voter registration given by election officials on most county recorders' websites in all but two counties, Apache County, which has a population under 100,000, and Yavapai County, which has a population under 225,000. *See* Exhibit 4 (collecting the information provided on each county recorders' website).[2]

34.    Indeed, most recorders' websites have instructions regarding the DPOC requirement that inform voters that they "must also include proof of citizenship or the form will not be processed" while failing to explain that this

_____

[2] The Pima County Recorder website includes information about the Federal Form in its Voter FAQs section under the following question: "Is there more than one form to register to vote in Arizona and are there differences between the forms?" However, on its voter registration page, it does not include any information about the Federal Form option and instead links to a document titled "New Voter Registration Requirements" that states that voter registration "must also include proof of citizenship" and does not include any information about the Federal Form option. Ex. 4 at 23-25.

is not the case with respect to Federal Forms for federal elections. *See*, *e.g.*, Pima County Recorder, Notice: New Voter Registration Requirements, https://www.recorder.pima.gov/docs/prop200.pdf; Ex. 4.

35.     Finally, notification of the Federal Form option is notably absent from the Secretary of State's proposed mail notification to voters that submit a State Form without DPOC.  Ex. 3 at 316, 322. These potential voters, who were not able to attach DPOC when turning in the State Form, are the most relevant audience for this notification. But the Secretary's proposed mail notification to these potential voters does not instruct officials to advise registrants of the Federal Form option. Instead, the sample letter states that the "law now requires that all NEW voter registration forms must be accompanied by satisfactory evidence of United States Citizenship" and "[y]our name will not be added to the voter registration file until we have received the new enclosed voter registration form with the required information." *Id.* at 322 (emphasis added).

36.     As a result, county recorders' offices send notices to voters who submit State Forms without DPOC that do not explain the option of using the Federal Form to register for federal elections and instead suggest that

providing DPOC is the only option to register to vote in any elections. *See* Exhibit 5 (form letters from eleven county recorders).[3]

37.    The option to register to vote in federal elections without DPOC is particularly important for those voters who lack the underlying documentation, easy access to copying services, and/or transportation to a registration office to deliver DPOC.

38.    It is also crucial for those voters who are only able to register prior to the deadline at a local registration drive, local library, or agency and do not have their birth certificate or other DPOC on their person at the time.

39.    Upon information and belief, this system has barred at least 26,000 otherwise eligible voters who used the State Form from participating in federal elections in Maricopa County alone and thousands more in other counties.

**Failure to Register Voters When MVD Records Confirm Citizenship**

40.    The Secretary of State's policies also instruct election officials to reject the registrations of voters even when satisfactory DPOC for those voters is

---

[3] Defendant Secretary of State's website includes one notification on its website of the Federal Form option: "Individuals may apply to register to vote in elections for Federal office using the Federal Voter Registration Form (link is external). In using the Federal Form, applicants are not required to provide proof of citizenship in order to register to vote in elections for Federal office." Arizona Secretary of State, Register to Vote or Update Your Current Voter Information, https://www.azsos.gov/elections/voting-election/register-vote-or-update-your-current-voter-information (last visited Nov. 2, 2017).

readily available to the Secretary of State through the ordinary voter registration process.

41.   As part of the ordinary voter registration process, the Secretary of State's office coordinates with the MVD to check *every* new voter registration, from both State and Federal Form registrants, against the MVD database. Where a driver's license or identification license number is not provided on the registration form, "[t]he Secretary of State will match available data with the Arizona Motor Vehicle Division. If there is a match, data from MVD will be added to the record." Ex. 3 at 17.

42.   Pursuant to Ariz. Rev. Stat. § 16-166(F), valid DPOC includes a "number of the applicant's driver license or nonoperating identification license issued after October 1, 1996 by the department of transportation or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver license or nonoperating identification license that the person has provided satisfactory proof of United States citizenship."

43.   Thus, in the case of Federal Forms, the Secretary of State has a commonsense policy. Even if the voter does not affirmatively provide a driver's license number, if there is a match with MVD that provides a driver's license number and that driver's license meets the statutory requirements above, election officials are instructed that "this constitutes proof of

13

citizenship . . . even if the registrant provided no other form of proof of citizenship." Ex. 3 at 25.

44.   Yet, for State Form registrants that do not provide a driver's license number or another form of proof of citizenship, election officials are instructed to *reject* outright the registration before the Secretary of State has the opportunity to conduct the MVD matching it would ordinarily perform and that could easily provide proof of citizenship. *Id.* at 17. ("If the form is not accompanied by proper proof of citizenship [including a Arizona driver's license number], the voter registration is not valid and either will not be entered into the system or if it was entered into the system, the record shall be cancelled.").

45.   Regardless of Arizona's interest in obtaining DPOC from its voters prior to state election registration, *see supra* note 1, Arizona does not have any legitimate interest in rejecting the registration forms of eligible Arizona voters for lack of "proof of citizenship" when the statutorily required proof is readily available to it.

46.   Upon information and belief, Defendant Maricopa County Recorder's office has begun to match voters' registration data with MVD data to determine if adequate proof of citizenship is readily available before rejecting a voter's registration for lack of DPOC regardless of whether the voter used the State Form or Federal Form.

14

47.     Upon information and belief, Defendant Fontes is also retroactively using this process for the approximately 26,000 previously disenfranchised voters who submitted State Forms to the Maricopa County Recorder's office yet were never registered to vote.

48.     Upon information and belief, Defendant Fontes has determined that at least 8,000 of those disenfranchised voters have a match in the Arizona driver's license database and, therefore, many of those individuals' citizenship can be readily verified.

49.     Upon information and belief, following Defendant Reagan's manual, other county recorders do not match MVD data for State Form registrants before rejecting them for failure to provide proof of citizenship although they match MVD data for Federal Form registrants and register those voters for all elections where the MVD match provides proof of citizenship.

50.     There is no rational basis for this distinction.

51.     There is no legitimate justification for disenfranchisement of voters where the statutory proof of citizenship is readily available to election officials.

52.     Arizona's DPOC statute and the Secretary of State's DPOC policies impose additional unnecessary burdens on voters unrelated to the state's asserted interest in obtaining DPOC from voters for registration.

53.    For instance, Arizona requires eligible voters to *re-submit* documentary proof of citizenship if a voter moves to another county within Arizona. *See* Ariz. Rev. Stat. § 16-166(G)-(H). Thus, once again, even where Defendants have voters' proof of citizenship available to them in another county recorder's office, election officials reject eligible voters' registrations on the basis of lack of proof of citizenship.

54.    Defendant Secretary of State's policies also require voters who failed to include DPOC with their initial voter registration form to *re-submit* their voter registration forms rather than merely providing the missing information, even if the submitted forms were facially valid. *See* Ex. 4 (county recorder notices requiring voters to resubmit their voter registration forms). This policy imposes an unnecessary and unjustifiable burden on voters, particularly those with limited literacy who rely on assistance to complete forms.[4]

55.    The Secretary of State's policies also bar voters from updating their voter registration records with valid proof of citizenship after the voter registration deadline even though the Election Manual allows voters to

---

[4] According to the 2003 National Assessment of Adult Literacy, twelve percent of adults in the United States have below basic document literacy (defined as "the knowledge and skills needed to perform document tasks"). Nat'l Ctr. For Educ. Statistics, Assessment of Adult Literacy, A First Look at the Literacy of America's Adults in the 21st Century (2006), https://nces.ed.gov/NAAL/PDF/2006470.PDF. An example of document literacy is the ability to fill out a certified mail receipt based on given information. *Id*. at 26.

update other "missing key information" in their voter registration applications up to the day before an election. Ex. 3 at 13, 35.

56.   Finally, the Secretary of State has issued a draft chapter on registration of the 2017-2018 Election Procedures Manual (attached as Exhibit 6). Rather than developing policies that ensure that all voter registrants are registered so long as statutory DPOC is obtainable, the Secretary of State's new proposed manual affirmatively *requires* election officials to reject State Form registrants for failure to provide DPOC *before* the MVD matching process, which could easily provide the necessary statutory proof. *See* Ex. 6 at 42 ("A State Form without accompanying satisfactory proof of citizenship must be rejected. A County Recorder may not acquire proof of citizenship on the registrant's behalf."). Moreover, it proposes ceasing to use MVD matching to verify citizenship for Federal Form registrants. *Id.* at 46 ("If a registrant failed to provide an AZ DL/ID # on the Federal Form but the AZ DL/ID # is later 'acquired' from the MVD proxy table, this does not constitute satisfactory proof of citizenship that allows that registrant to become a 'full ballot voter.'").

57.   If this new draft chapter goes into effect, it will further compound the constitutional harms of the current policies by increasing the number of eligible voters disenfranchised despite Arizona's access to adequate DPOC for those voters.

58.    The impact of these policies on eligible Arizona voters is undeniable. Upon information and belief, at least 26,000 voters in Maricopa County alone have been disenfranchised by these policies. Moreover, based on a sample of over 2,000 rejected State Form registrations for lack of DPOC across eight counties, less than fifteen percent of the rejected voters successfully re-registered after receiving notice of the rejection of their registrations. Therefore, many eligible voters across Arizona have been disenfranchised by these unnecessary bureaucratic policies.

## PARTIES

### *Plaintiffs*

### League of United Latin American Citizens Arizona

59.    Plaintiff League of United Latin American Citizens Arizona (LULAC-Arizona) is the Arizona-based branch of the oldest and largest national Latino civil rights organization. LULAC is a non-profit membership organization with a presence in most of the fifty states. Founded in 1929, it works to advance the economic condition, educational attainment, political influence, health and civil rights, including voting rights, of the Hispanic population of the United States.

60.    LULAC-Arizona members live in all sectors of the State. LULAC has local councils throughout Arizona including in Phoenix, San Luis, Tucson, Tempe, Yuma and other smaller communities.

18

61.    LULAC-Arizona's members are affected by the undue burdens Arizona's voter registration policies place on eligible Arizona citizens. Over 400,000 eligible Latino citizens in Arizona, or nearly half of eligible Latinos in Arizona, are not currently registered to vote.

62.    Voter registration activity is key to LULAC's mission of increasing civic participation of its members. LULAC-Arizona has committed and continues to commit time, personnel, and resources to voter registration drives in Arizona.

63.    Voter registration is an ongoing yearly project, organized by LULAC and LULAC-Arizona together with other organizations and LULAC-Arizona members throughout the State. LULAC-Arizona members participate in registration drives in various forums including schools, college and universities, malls, fairs and organized block walking activities registering citizens to vote.

64.    Due to Arizona's unconstitutional and differential treatment of voter registrations depending on the form used, LULAC has had to divert and continues to divert its resources, including staff and volunteer time, to helping voters navigate the dual voter registration system.

65.    Defendants' disparate treatment of State and Federal Forms means that voter registration drive organizers must either use the State Form and forego registering voters without DPOC available to them, use the Federal

19

Form and require volunteers to inform every potential voter of the DPOC requirement orally, or engage in an individualized assessment of which form to give to a voter based on their DPOC access. All of these options impose severe limitations on the success of LULAC-Arizona's voter registration activity.

66.    Since LULAC-Arizona conducts voter registration drives on-site in communities with the goal of completing voter registrations on-site, potential voters who do not have Arizona drivers' licenses and/or do not have DPOC with them cannot fully participate.

67.    As a result of Defendants' ongoing unconstitutional policies, LULAC-Arizona's voter registration drivers are less successful; LULAC-Arizona must dedicate more resources in order to register the same number of members; and fewer LULAC-Arizona members are able to successfully register to vote.

**Arizona Students' Association**

68.    Plaintiff Arizona Students' Association ("ASA") is a student-led, non-partisan membership organization created to represent the collective interest of the over 140,000 university students and over 400,000 community college students in Arizona. ASA advocates at the local, state, and national levels for the interests of students. As a part of its mission, ASA encourages students throughout Arizona to register to vote through voter registration activity.

ASA has committed and continues to commit time and personnel to voter registration drives in Arizona.

69.    ASA's members, students throughout Arizona, are particularly affected by the undue burdens Arizona's voter registration policies place on eligible Arizona citizens. Many students are young adults who are just becoming eligible to vote and therefore must register for the first time. Students in Arizona living on campuses often do not have easy access to their birth certificates or other underlying documentation. Many students eligible to vote in Arizona have out-of-state driver's license that do not meet the statutory DPOC requirements. Many other students cannot afford to pay for state IDs or driver's licenses. Finally, students in Arizona tend to relocate often and are required to re-submit DPOC anytime they move from one county to another.

70.    ASA has regularly conducted and will continue to conduct voter registration drives in Arizona. These voter registration drives focus on registering students, many of whom are first time voters and unfamiliar with the voter registration system. ASA conducts its voter registration drives on school sites throughout Arizona.

71.    Due to the State's unconstitutional and differential treatment of voter registrations depending on the form used, ASA has had to divert and

continues to divert its resources, including staff and volunteer time, to helping eligible voters navigate the dual voter registration system.

72.    Defendants' disparate treatment of State and Federal Forms means that voter registration drive organizers must either use the State Form and forego registering voters without DPOC available to them, use the Federal Form and require volunteers to inform every potential voter of the DPOC requirement orally, or engage in an individualized assessment of which form to give to a voter based on their DPOC access. All of these options impose severe limitations on the success of ASA's voter registration activity.

73.    Since ASA conducts voter registration drives on-site at schools with the goal of completing voter registrations on-site, potential ASA members and voters who do not have Arizona drivers' licenses and/or do not have DPOC with them cannot fully participate.

74.    As a result of Defendants' ongoing unconstitutional policies, ASA's voter registration drivers are less successful; ASA must dedicate more resources in order to register the same number of members; and fewer ASA members are able to successfully register to vote.

### *Defendants*

75.    Defendant Michele Reagan is the Arizona Secretary of State, a statewide elected public officer, and is named in her official capacity. The Secretary of State serves as the Chief Election Officer for Arizona. Ariz. Rev.

Stat. § 16-142. The Secretary of State is the public officer responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration. *Id*; *see also Arizona Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427 at \*6 (D. Ariz. Nov. 3, 2016) ("The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines. . . . Any person who does not abide by the Secretary's rules is subject to criminal penalties.").

76.    Defendant Adrian Fontes is the Maricopa County Recorder, a countywide elected officer, and is named in his official capacity. Ariz. Const. Art. XII § 3. The Maricopa County Recorder is responsible for conducting voter registration in Maricopa County.

## CLAIMS

### Count 1: Undue Burden on the Right to Vote and Equal Protection, 14th Amendment (42 U.S.C. § 1983)

77.    Plaintiffs reallege the facts set forth in paragraphs 1-76 above.

78.    "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1440–41 (2014). The Supreme Court has recognized that "voting is of the most fundamental significance under our constitutional structure" and the right to an effective vote is protected by the Equal Protection Clause of

the Fourteenth Amendment. *See Burdick v. Takushi*, 504 U.S. 428, 433-44 (1992). Indeed, the right to vote is the "fundamental political right . . . preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

79.    When analyzing the constitutionality of a restriction on voting, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

80.    Defendants Secretary of State's current procedures for Arizona's dual registration system arbitrarily distinguish between Federal Form and State Form applicants and unjustifiably result in the disenfranchisement of eligible Arizona voters in both state and federal elections.

81.    Upon information and belief, by failing to register State Form applicants without DPOC for federal elections—while registering Federal Form applicants that provide the exact same information for federal elections—Defendants deprive tens of thousands of eligible voters of the right to vote in federal elections. Defendants exacerbate these harms by failing to

advise registrants of the Federal Form option. This policy does not serve Arizona's asserted interest in obtaining DPOC from voters prior to their registration in state elections.

82.     Upon information and belief, by instructing officials not to match State Form applicants' data against MVD data to verify citizenship—even though Defendant Reagan instructs officials to conduct MVD matching as a matter of course during the registration process for all registrants and considers that data sufficient proof for similarly situated Federal Form applicants—Defendant Reagan deprives thousands of eligible voters the right to vote in both state and federal elections. This policy does not serve Arizona's asserted interest in obtaining DPOC from voters prior to their registration in state elections because DPOC for the affected voters is readily available to Defendants.

83.     By requiring voters to re-submit new proof of citizenship when they move to a new county, Defendants impose unnecessary and unjustifiable burdens on the right to vote of eligible Arizonans. This requirement does not serve Arizona's asserted interest in obtaining DPOC from voters prior to their registration in state elections because DPOC for the affected voters is readily available to Defendants.

84.     With the exception of the requirement that voters re-submit proof of citizenship when they move from one county to another, these policies are not

required by state or federal law and are merely the result of the Secretary of State's policies.

85.     These policies cannot survive even rational basis review and certainly cannot survive the more exacting review given to voting restrictions.

## Count 2: Undue Burden on the Right to Vote, 1st Amendment
## (42 U.S.C. § 1983)

86.     Plaintiffs reallege the facts set forth in paragraphs 1-85 above.

87.     Voting and participating in the election process is a form of speech and expression. It is the ultimate form of political speech and association and is entitled to First Amendment protection.

88.     As unjustified restrictions on access to the right to vote, Defendants' dual voter registration policies violate the First Amendment.

## PRAYER FOR RELIEF

89.         WHEREFORE, Plaintiffs respectfully pray that this Court:

(1)     Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

(2)     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the above-described policies of the Defendant Secretary of State Reagan violate the Equal Protection Clause of the Fourteenth Amendment and the First Amendment;

(3)     Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering that Defendants:

       a. Register State Form applicants to vote in federal elections if their forms are otherwise valid regardless of whether they attach DPOC;

       b. Match State Form registrants' data with MVD records to verify citizenship before rejecting State Form registrants for state and local elections;

       c. Refrain from requiring State Form registrants to re-submit DPOC when they move from one county to another and re-register;

       d. Notify potential voters of the option to register to vote in federal elections without DPOC in all written materials regarding the process for registering to vote that Defendants distribute or make available to the public (including websites).

(4)     Retain jurisdiction over the Defendants for such period of time as may be appropriate to ensure the Defendants' compliance with relief ordered by this Court;

(5)     Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

27

(6)     Grant Plaintiffs such other and further relief as may be just and equitable.

November 7, 2017

By:     /s/ Spencer G. Scharff

Spencer G. Scharff (AZ Bar No. 028946)
**Goddard Law Office PLC**
502 W. Roosevelt Street
Phoenix, Arizona 85003
Tel: (602) 258-5521
Email: scharff@goddardlawplc.com

Paul M. Smith (DC Bar No. 358870)*
J. Gerald Hebert (VA Bar No. 38432)*
Adav Noti (DC Bar No. 490714)*
Danielle Lang (CA Bar No. 304450)* †
Mark Gaber (DC Bar No. 988077)*
**Campaign Legal Center**
1411 K Street NW Suite 1400
Washington, DC 20005
Tel: (202) 736-2200
Email: dlang@campaignlegalcenter.org
†Admitted in New York and California only;
practice limited to U.S. courts and federal
agencies

Jon M. Greenbaum (DC Bar No. 489887)*
Ezra D. Rosenberg (DC Bar No. 360927)*
Arusha Gordon (DC Bar No. 1035129)*
**Lawyers' Committee for Civil Rights
Under Law**
1401 New York Avenue NW Suite 400
Washington, DC 20005
Tel: (202) 662-8345
Email: erosenberg@lawyerscommittee.org

28

Andrew W. Schwartz (CA Bar No. 87699)*
Winter King (CA Bar No. 237958)*
Stephanie L. Safdi (CA Bar No. 310517)*
**Shute, Mihaly & Weinberger LLP**
396 Hayes Street
San Francisco, CA 94102
Tel: (415) 552-7272
Email: schwartz@smwlaw.com

Luis Roberto Vera, Jr. (TX Bar No. 20546740)*
**Law Office of Luis Roberto Vera Jr.**
**LULAC National General Counsel**
111 Soledad, Ste 1325
San Antonio, TX 78205
Tel: 210-225-3300
Email: lrvlaw@sbcglobal.net

Manuel G. Excobar, Jr. (TX Bar No. 06665800)*
**LULAC National Legal Advisor**
201 W. Poplar St.
San Antonio, TX 78212
Tel: 210-225-1400
Email: Escobarm1@aol.com

*Pro hac vice application forthcoming*