**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| League of United Latin American Citizens Arizona, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Michele Reagan, in her official capacity as Secretary of State of Arizona, et al., <br><br> Defendants. | No. CV17-4102 PHX DGC <br><br> **ORDER** |

In November 2017, the League of United Latin American Citizens Arizona and the Arizona Students' Association ("Plaintiffs") brought this action against Michele Reagan, in her capacity as Secretary of State of Arizona, and Adrian Fontes, in his capacity as Maricopa County Recorder ("Defendants"). Plaintiffs alleged that Arizona had a dual voter registration system that violated various constitutional guarantees. The parties settled the lawsuit by negotiating a Consent Decree to solve the problem identified by Plaintiffs. Without admitting fault, Defendants agreed to take certain steps to ensure that voters would not be disadvantaged by the issues Plaintiffs had noted. On stipulation of the parties, the Court entered the Consent Decree on June 18, 2018. Doc. 37.

A federal, state, and local election was held on November 6, 2018. Three days later, on November 9, 2018, the ACLU filed a motion on behalf of Luis Cisneros, arguing that Defendants had violated the Consent Decree. Doc. 39. Although Mr. Cisneros was not a party to the decree, the ACLU argued that he was entitled to enforce it because he was an intended beneficiary. The motion asked the Court to issue orders to Defendant

Reagan and the Pima County Recorder. Although the Pima County Recorder was not a party to the Consent Decree, the ACLU argued that the decree could be enforced against her pursuant to Rules 65 and 71 of the Federal Rules of Civil Procedure. Doc. 39.

Mr. Cisneros complained that he is a naturalized United States citizen, that he registered to vote in Pima County after moving there recently, and that he received a letter from the Pima County Recorder advising him that he was not eligible to vote. His ineligibility stemmed from the fact that Mr. Cisneros holds an F-type Arizona driver's license, which normally is issued to noncitizens. Knowing that he was a citizen, Mr. Cisneros promptly went to the County Recorder's office, submitted his passport as proof of citizenship, and was registered as a voter. Although he was told that he would not be able to vote until after the November 6th election, Mr. Cisneros submitted a provisional ballot for the election. His motion asked the Court to order Defendant Reagan and the Pima County Recorder to count his provisional ballot.

Mr. Cisneros' ballot was later counted. *See* Doc. 45. As a result, his motion is now moot.

On Monday, November 12, 2018, Plaintiffs filed a motion asking the Court to hold that Defendants violated the Consent Decree. Doc. 40. Plaintiffs' motion was based on Mr. Cisneros's situation. Because he, as a holder of an F-type driver's license, initially had not been allowed to register to vote, Plaintiffs alleged that others might be in the same situation. Plaintiffs asked the Court to impose relief that will be described below.

Plaintiffs' motion comes with some time pressure. As the parties agree, County Recorders and the Secretary of State are required by statute to complete their verification of ballots cast in the November 6th election by this Friday, November 16, 2018. This is a time-intensive process that requires election officials to verify millions of votes cast in Arizona last week. The canvas for the election must be completed ten days later, by November 26, 2018. Counsel for the Maricopa County Recorder's Office explained that the canvas for Maricopa County will be thousands of pages in length and will provide data on votes cast for each office, in each of hundreds of precincts, and substantial

additional information. The canvas must be approved by the Maricopa County Board of Supervisors by November 26, 2018, and provided to the Secretary of State. Because of these pressing dates, Plaintiffs asked that their motion be heard on an emergency basis. Doc. 40 at 2.

On the afternoon of November 12th, the Court entered an order requiring the affected persons – Defendant Reagan and the Pima County Recorder – to file responses the next day, and scheduled a hearing for today at 9:00 a.m. Doc. 41. Defendant Reagan and the Pima County Recorder filed their responses (*see* Docs. 46, 49), and the Court held a hearing this morning for almost two hours. After confirming that the motion brought by the ACLU is now moot, the hearing focused on issues raised in Plaintiffs' motion and Defendants' responses.

The Court's schedule also creates time pressure. As the Court advised the parties at the hearing, due to the press of other cases, it was not able to begin reading briefs on this matter until 8:30 p.m. last night. The Court also advised the parties that it must rule by early this afternoon because its schedule is fully committed the remainder of today and on November 15th and 16th.

**A. Complex Issues.**

Plaintiff's motion presents a number of complex issues. These include, but are not limited to, the following:

1. Plaintiffs seek relief against the Pima County Recorder, who is not a party to the Consent Decree. And Defendants assert that the relief requested by Plaintiffs would require action on the part of every other County Recorder in Arizona. With the exception of the Maricopa County Recorder, no County Recorder is a party to this action.

Plaintiffs contend that the Court may take action against nonparties pursuant to Rule 71. But this rule does not provide a basis for the Court to hold that all County Recorders within Arizona are bound by the Consent Decree. "While Rule 71 establishes the procedure for enforcing an order against a nonparty, it does not define the scope of individuals who are bound by an order, or grant the Court authority over any particular

categories of nonparties." *Llorens Pharm., Inc. v. Novis PR, Inc.*, No. 04-2188, 2010 WL 521144, at *6 (D.P.R. Feb. 9, 2010); *see also Intl Millennium Consultants, Inc. v. Taycom Bus. Solutions*, 463 F.App'x. 506, 511 n.1 (6th Cir. 2012).

Plaintiffs also contend that the Consent Decree can be enforced against nonparty County Recorders pursuant to Rule 65(d)(2)(C). That rule allows enforcement of an order against "persons who are in active concert or participation" with a party to the order. Fed. R. Civ. P. 65(d)(2)(C). Case law recognizes that this rule applies to two categories of persons: nonparties who aid and abet a party in violating a court order, and nonparties who are in privity with a nonparty, generally meaning nonparties who are in some way legally identified with the enjoined party. *See ADT LLC v. Northstar Alarm Servs., Inc., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).

Whether County Recorders in Arizona can be said to be in privity with the Arizona Secretary of State for purposes of Rule 65 is a question not easily answered. To resolve this issue, the Court would need to research Arizona statutes and case law concerning the relationship between the Secretary of State and County Recorders (an issue on which the parties have strong disagreement), as well as the interpretation of Rule 65 within the Ninth Circuit. The parties have not briefed this issue, and the Court does not have time to research and resolve it.

2. Whether Defendant Reagan has violated the Consent Decree is another complicated issue. The most relevant portion of the decree is section 2, beginning on page 8. *See* Doc. 37. The first three subsections require the Secretary to "provide guidance" to County Recorders regarding the decree. *Id*. The fourth section requires the Secretary to compare all state voter registration applications submitted without documentary proof of citizenship ("DPOC") to a State database. If the database shows that an applicant holds an F-type driver's license, the Secretary is to notify the relevant County Recorder of this fact. Upon receiving this notification, the County Recorder must change the applicant's voter registration to "not eligible" because F-type driver's licenses generally are issued to noncitizens. The Consent Decree then instructs the Secretary to

1  "provide guidance" to the County Recorders that they must notify the applicants by U.S. Mail, within ten business days, that the applicant holds an F-type license, indicating noncitizenship, and therefore will not be registered to vote.  The notification must also inform the applicant that he or she can provide valid DPOC to the County Recorder by the Thursday before the election in order to receive authorization to vote. *Id*. at 9.

Defendant Reagan contends that she complied with these requirements. She notes that she sent an email to all County Recorders advising them of this requirement of the Consent Decree, attaching an explanatory Powerpoint presentation and a copy of the Consent Decree. *See* Doc. 40-2. She further notes that she held a meeting with all County Recorders to advise them of the Consent Decree requirements. She contends that she complied with the requirement to advise County Recorders when applicants had F-type driver's licenses, and, to the extent County Recorders did not notify such applicants that they could submit DPOC by the Thursday before the election, she was not at fault.

Plaintiffs contend that Defendant Reagan had an obligation to create a form that would advise F-type license holders of the opportunity to submit DPOC by the Thursday before the election. Plaintiffs assert that Defendant Reagan never did so, that the opportunity to submit DPOC therefore was not communicated by County Recorders to people in Mr. Cisneros's position, and that Defendant Reagan therefore violated the Consent Decree.

An essential part of this dispute concerns the authority of the Secretary of State. Defendant Reagan contends that she does not control County Recorders. Plaintiffs disagree. Each side cites statutes and case law. Resolving this issue, and parsing the Consent Decree to determine whether or not a violation has occurred, would require significant research and analysis. There is no time for such research and analysis.

3. As relief, Plaintiffs ask the Court to order Defendant Reagan to identify all persons who attempted to register as voters but were advised they were not eligible because they held an F-type driver's license. From among these, Plaintiffs ask that Defendant Reagan be ordered to identify all individuals who, like Mr. Cisneros,

submitted DPOC by the Thursday before the election and cast a provisional ballot. Plaintiffs ask the Court to order that the ballots for such individuals be counted. For persons who received notice that they were not eligible and did not submit DPOC by the Thursday before the election, but nonetheless cast a provisional ballot, Plaintiffs ask the Court to order that Defendant Reagan and the County Recorders allow the submission of DPOC now, and, upon its submission, count the provisional ballots for such individuals.

Defendants contend that these steps would require extensive work and be highly disruptive during this intense time of verifying and canvasing of ballots from the November 6th election. They contend that special queries would have to be written for the State database, and that County Recorders would have to be involved in identifying which individuals received notices like Mr. Cisneros's. Plaintiffs disagree, asserting that Defendant Reagan has access to a comprehensive database from which this information should be readily available.

The Court is not equipped to resolve this factual dispute. It has nothing more than the parties' assertions. But if the relief sought by Plaintiffs would significantly disrupt the work of completing the election, it raises concerns discussed below.

**B.      The Problem of Rushed Election Litigation.**

The parties' briefing and today's hearing show that Plaintiffs knew about some of these problems in August. Plaintiffs' counsel contacted counsel for Defendant Reagan on August 1, 2018, asserting that Defendant Reagan was required to create a special form for F-type license holders to be used in connection with the November 6th election. Plaintiffs' counsel asked that a copy of the form be created and shared with Plaintiffs. Counsel for Defendant Reagan disagreed that the Consent Decree required the creation of such a form. The parties exchanged emails in August, and again during the month of October, but no resolution of this issue was reached. Plaintiffs' counsel stated during today's hearing that counsel for Defendant Reagan assured her that the Secretary would comply with the Consent Decree.[1]

---

[1] Although the Court does not have all the facts, it also appears that counsel for

During today's hearing, Plaintiffs' counsel took the position that Defendant Reagan's failure to create a specific form for F-type driver's license holders is at the heart of the confusion caused to Mr. Cisneros and others in his position. In other words, the very issue addressed by the parties in August has now created problems in the election. Despite the fact that the issue arose back in August, Plaintiffs did not file their motion until 10:00 a.m. on November 12, 2018, a full six days after the election and less than five days before voter verification work must be completed.

As this Court has previously stated: "Over the last 25 years, the Arizona Supreme Court has repeatedly cautioned that litigants should bring election challenges in a timely manner or have their requests for relief denied on the basis of laches." *Arizona Libertarian Party, et al. v. Reagan*, 189 F.Supp.3d 920, 923 (D. Ariz. 2016). As the Court further explained:

> As Arizona cases have noted, the real prejudice caused by delay in election cases is to the quality of decision making in matters of great public importance. Unreasonable delay can prejudice the administration of justice by compelling the court to steamroll through delicate legal issues in order to meet election deadlines. Late filings deprive judges of the ability to fairly and reasonably process and consider the issues and rush appellate review, leaving little time for reflection and wise decision making.

*Id.* at 923 (internal citations, quotation marks, ellipses, and brackets omitted).

Federal courts have likewise recognized that problems can arise from rushed election-related decisions. *See Purcell v. Gonzalez*, 549 U.S. 1, 5-6 (2006). They have held that a court may refrain from deciding a contested issue where the election or results of the election are imminent, and there is inadequate time to resolve the factual disputes. *Id.*; *see also Feldman v. Ariz. Sec'y of State's Office*, 840 F.3d 1165, 1166 (9th Circ. 2016) (Mem.) (declining to issue any order that would potentially disrupt the procedures just four days before the election).

---

Plaintiffs had concerns that the guidance created by Defendant Reagan in the form of an addendum to the state-wide manual used by County Recorders did not accurately reflect the Consent Decree. Those concerns were also communicated to Defendants months before the election.

The Court will refrain from resolving this issue. The Court does not have the time, and Defendants have not provided sufficient briefing, to decide the complex issues raised by the motion. Rather than rush to judgment and make a decision that might be incorrect, or might seriously disrupt completion of the November 6th election process, the Court will deny Plaintiffs' motion. The denial is not because Plaintiffs have failed to raise serious issues, but because those issues could have been raised months ago when a careful decision would have been made.

**IT IS ORDERED:**

1. The motion filed by Mr. Cisneros (Doc. 39) is **denied as moot.**

2. Plaintiff's motion (Doc. 40) is **denied** for reasons stated above.

Dated this 14th day of November, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge